with your argument. Again, I would like to thank the court for allowing this to occur during my scheduled conflict. I would rely upon my briefs for the first amendment issue, the constitutionality of the interstate stalking issue, and the judicial bias issue, and will be proceeding to argue on the gender identity issue, the VAWA issue, which was a contract issue, and the IAC issue. So in our brief, we relied heavily on the gender identity issue, citing Bostock, which affords Title VII protection, which extends to sexual orientation and gender identity. The government committed error when they indicated that Thomason had a gender ID and dysphoria issue, which were recently new developments in his life, when in fact Thomason identified as a female four years prior to this case, and that Thomason and a makeup bag recovered from Thomason's vehicle belonged only to Thomason, and were meant only for Thomason. Thomason's attorney utilized male pronouns when referring to Thomason, which was just one example of Thomason's attorney's ineffective assistance, which will be discussed supra. Thomason requested multiple times that counsel use gender neutral pronouns, and asked the government and the lower court's usage of male pronouns to not occur. Flagrant misconduct and substantial prejudice must be proved, and the government must have been sufficiently aware of the move in status. They were. Thomason informed the prosecution and district court of Thomason's status as transgender, gender nonconforming. Not only did Thomason inform the prosecution, Thomason preferred gender neutral pronouns, but the prosecution was fully aware of Thomason's formal diagnosis of gender dysphoria and the mental health issues that accompany such a diagnosis, and it was prominent in the PSI. Yet they continued to use masculine pronouns, not only in written documents, but also in district court proceedings on the record. They used this to put Thomason into a mold Thomason clearly did not fit into. This gender bias serves to depict Thomason as a gunman and a scorned former boyfriend fitting the stereotype for a stalker, as well as promoting the goal to obtain the most punitive sentence possible. They used the female clothing and makeup bag to depict a makeshift, darker JNS acknowledging these were Thomas's. The government portrayed Thomas as a crazy and controlling ex-boyfriend, despite crystal clear evidence to the contrary, which proves flagrant misconduct as required by the Babbiar test. The government characterized Thomason as a male, but Thomason was regendered in an effort to advance the objectives of the Yes. Is the prejudice you're alleging something that would have happened at the sentencing proceeding? At the sentencing proceeding? Yes. All right. So you're claiming that the district judge was influenced by the government's choice of words and use of pronouns in a way that just so I can understand, what is in your view the correct gender neutral pronoun for an individual single person? They and them. I thought those words were plural. It refers to somebody who has the condition that Mr. Thomason has. Is that an accepted use of the English language to use a plural to refer to an individual, or is there a new gender neutral word for an individual person? Well, if you look to the government's responsive brief, they use exactly the term that I did in their entire brief. Well, I know, and it was confusing to read sometimes, because there were paragraphs about two people, and then the word they or them would appear, and it was unclear whether the brief was referring to Thomason individually or to Thomason together with someone else, and that's why I wonder if the proposed word is the correct one. It is. That is the accepted version in today's society, is they and them, and that is the correct one. How do you say that the government's use of the masculine pronoun, and I guess counsel's use of the masculine pronoun, Thomason's counsel's use of it, prejudiced him in the sentencing? Because they painted Thomason as somebody who was a scorned boyfriend, and not the individual that Thomason is. There were things that were done that clearly tried to stick Thomason into a mold Thomason did not fit into. He wasn't a scorned former, Thomason wasn't a scorned former boyfriend, fitting the stereotype for a stalker, and Thomason, they used this because Thomason brought women's clothing and makeup, and they refused to acknowledge that that was Thomason's, and instead indicated that this was Thomason's items brought for a kidnapping, which by the way, there wasn't a kidnapping, and I will get to that. Can you point to something that the district judge said or found that you say is error that was influenced by this use of pronouns, because I understand your argument about what the lawyer argued for the government, but what you're focused on in the district court's decision, which is what's under review? Well, the district court not only referred to Thomason in male pronouns, but the district court indicated, and I don't have the transcript in front of me, but indicated that the judge believed that this was a scorned boyfriend, that this was somebody who was attempting to use those items to effectuate a kidnapping when they were Thomason's transgender items, and the fact that the court continued to refer to him in male pronouns, despite his request not to, suggests that there was a prejudice. Mr. Kramer, this is Judge Gross. I do have a question. There's some recent authority from the Fifth Circuit that is not bound by that court's decision whatsoever, and I think that this court has to look at the totality of the facts in this case, including the understanding that stereotyping violates free speech and equal protection, which was witnessed by the fact that there was a picture book regarding Thomason's gender issues, and nobody refused to acknowledge it, everybody refused to acknowledge it, including the trial court. They ignored it. What about the fact that Thomason himself said that he would sometimes use the male pronoun in the interest of clarity? That may be, but Thomason indicated in the court proceedings that Thomason wished to be spoken to and talked to with the gender neutral pronouns, and that was done over and over. I thought Thomason said both, though. There was a submission that said Thomason prefers the gender neutral pronoun, and then there was a submission, or maybe the same submission, that said that counsel would use the male pronoun in some cases in the interest of clarity. That was the counsel. I'm sorry, go ahead, please. How can it be misconduct for the government or the court to do it? Because it was done against Thomason's wishes, which will be dovetailed into the IAC argument. Regardless of what Thomason's lawyer says, Thomason asked the court to not do that. And one of the arguments in our brief is that there wasn't an effective assistance of counsel, which would require a remand for a new sentencing, because the attorney for Thomason did not abide by Thomason's wishes. And I will get to that. If the court has any other questions, I will move on to the VAWA argument. You may. Okay. Thomason was sentenced, and Thomason was given an agreement. The agreement was that Thomason would be sentenced to a specific statute for restitution, however, not VAWA, which is the Crime Against Women's Act. And there was no violence that occurred here. The plea agreement is reviewed de novo. And when a defendant agrees to a plea bargain, the government takes on certain obligations. If those obligations are not met, the defendant is entitled to seek a remedy, which might in some cases be rescission of the agreement, allowing the person to take back the consideration they furnished. And that's Puckett v. United States. I know the court's aware of that decision. It's 556 U.S. 129. Accordingly, due process considerations require the government's promises must be fulfilled. When an element of the plea agreement is part of the inducement or consideration for pleading guilty, the government breaches that agreement by advocating for a penalty more severe than specified in the agreement. And that's the Lovelace case. In this situation, the restitution under MDRA was a bargained for term of the agreement between Thomason and the prosecution. By advocating for restitution under an additional statute, which was not contemplated in the plea agreement and was not raised until the prosecution asserted it in its restitution memorandum, and thus increasing the severity of Thomason's restitution amount, constitutes a breach of the plea agreement under this court's current precedent. At no point prior to the prosecution's restitution memorandum was Thomason informed of this supposed mandatory restitution under the Violence Against Women Act, a restitution much broader and much more severe than the I can understand why your client may have felt surprised by this, but isn't the problem that the plea agreement didn't specifically set any ceiling on the source of restitution? It didn't limit the source just to the one statute? It acknowledged that MDRA would be the statute that restitution would fall under. There was no mention of VAWA. So Thomason has no idea that Thomason has to deal with VAWA and the restitution on that. It should have been brought up if they wanted to use it. And honestly, there were other issues that, you know, as it relates to that, the agreement was that the, let me just find this, I'm sorry. Mr. Kramer, you have one minute, 13 seconds remaining in your time. Okay. The government used the language also, they were not allowed to talk about elements of injure and kill. They were allowed to talk about elements of harassment and intimidation only. And that was again, a breach of the plea agreement that was considered by the judge when issuing an upward departure. As it relates to the ineffective assistance of counsel argument, the counsel for Thomason did not even challenge the fact that there was a warrant out that stated there was a kidnapping that took place when there wasn't one. That should have been challenged amongst many other things I'd like to get into, but I believe I'm probably out of time and I will save my three minutes for rebuttal and I thank the panel again. You're welcome. I'm afraid you don't have three minutes for rebuttal because you're down to 15 seconds, but thank you for your argument and we'll hear from Mr. Cheever now for the government. Thank you, your honor. May it please the court. I am Mike Cheever. I represent the United States in this case. We haven't run into the issue, but if we do, I do not mean disrespect to the defendant if I use he, him, her. My preference, personal preference is to try and use they, them, their, but I'm incapable and I will muddle it and I will cause confusion. Mr. Cheever, let me ask you about that. It's your position that there was no animus demonstrated by the trial judge's use of gender-specific singular pronouns and yet in your brief you use a plural gender-neutral pronoun. Doesn't that kind of undercut your argument? Not at all, your honor. As a matter of clarification, the issue, the defendant's not challenging the district judge's use of male pronouns. He's challenging only the prosecutor's use of those pronouns. It's a matter of personal preference in society and it's a matter of context. In the context of an appeal, the victim's not the focus. The district court decision is and I've chosen to try and use they, them, their because it's, I believe, respectful to a transgender person that chooses those. I try to balance that with clarity to the court and I've done my best to do that. That's a matter of personal preference. It's not a matter of law and as I say, it's a matter of context that we lack a record on. The defendant says he raised this multiple times, but it was raised once in a letter by a counsel which Judge Colleton notes also used, went on to use male pronouns. There was no objection to the government's use of it and so we don't have, not until after the sentencing hearing, sentencing and restitution hearing and then the government didn't submit anything and didn't have any oral statements. So there wasn't anything for the defendant to object to at that point or reason for a hearing. The hearing, there are multiple things to come up at a hearing on issues such as this and I don't limit it to gender neutral pronouns, although those create special problems there. This is the same issue that would come up if someone referred to me in air quotes as he. There's different ways to be disrespectful and it doesn't have to be transgender. The district judge was not allowed to explain why, what his view was. Defense counsel was not allowed to explain why she used male pronouns and the AUSA wasn't given a chance to even explain whether or not she noticed the request in the letter to the probation office or why she chose to use male pronouns. If that had come up, there's a question of how the victim's point of view, victim, her point of view should be considered in the district court. There's also the question of how does this happen midstream and is it a deliberate, is it a genuine request for a change of plea or is there a reason why it got changed mid-case. I'm not questioning the defendant's sincerity at being transgender, but those questions would need to be answered. There's the confusion of changing, of using plural pronouns rather than singular ones. And there's a question of whether any of that could ever amount to misconduct given that society, as Judge Collett notes, has not adopted the general use of a plural gender neutral pronoun for an individual. There's no even general acceptance for the idea that a singular gender pronoun must be used rather than the physical sex pronoun for a defendant. Is there a word that's recognized as a singular gender neutral pronoun that could have been used rather than they and them? There are multiple ones and that's the problem, one of the problems the there's a range of them. It would be much preferable if society agreed upon one. This defendant chose they, them, their. Defense counsel is correct that the society is shifting to want to respect that. There is a division in courts. The Ohio appellate court sided with the pronouns. That's not generally accepted. We're nowhere near to finding flagrant misconduct by a prosecutor, substantial prejudice, much less that this is all a matter of discretion for the district court to deal with based on all these factual and contextual and societal issues. To say that it abused its discretion by failing to do what? Caution all the people, to caution itself, to give an order. There's no suggestion what the district court was supposed to do sua sponte in response to this. That's the abuse of discretion standard. It wasn't raised so it's under the plain error standard so that abuse of discretion is certainly not clear or plain. Then the burdens on the defendant to show prejudice, substantial prejudice in these cases. There is an issue for how the court wants to proceed in the future. And I'll comment on that if the court cares. There are other ways far short of a due process claim that district courts in particular use to control defendants or parties if they use insulting language. I'm not suggesting for a minute that he, him or his is insulting language but it does happen in district courts. There's rules of professional responsibility requiring lawyers to be respectful. In Minnesota it's rule 8.4H in particular. There's cautions that district courts can give. There's orders they can give. They've got contempt power. They can refer people to the state bar. They've got their own admission to the federal bar. The same is true in this court. If I was being insulting to one of the parties or the victim or somebody, this court could act. None of that requires a new rule on gender neutral pronouns. It's already the district court, this court, you're already readily capable to deal with this issue. And the matter of referring to, they did it in their opening brief talking about the women's clothing. It seems like a minor issue that's relied on very heavily here so I address it. The government in its brief responded to this argument that the victim said they were Thomason's clothing by saying the record showed the opposite. That's at I believe page 54 of the government's brief. But we cited among other things to the sentencing transcript, there's an evidentiary here in page 31. That where the agent who had spoken to the victim testified and said, well, did you ask about the clothing? Yes, they were her size, not him, and you can find elsewhere in the record that the sizes are different. They wouldn't have fit him just because they would have fit her. The makeup bag was hers, the clothing was for her, and the sanitary napkins, of course, were for her. Making our use of that record to suggest there was a kidnapping plot somehow misconduct is really quite a stretch. For the plea agreement issue, I just cite you to my brief. The court is very sensitive to debate. This case doesn't come close to the government. There was no promise by the government, much less one that it exceeded. Unless the court has questions on that, I will not elaborate further, and unless you have other questions, I'll rely in other respects on my brief. Thank you, your honors. All right. Thank you for your argument. Mr. Kramer, how about if we give you one minute for rebuttal since you used almost all of your time, and Mr. Cheever gave some back. Yes, thank you, your honor. To get back to what I consider extremely important, under the argument that I include with VAWA about violating the agreement, there was an agreement that the elements, injure and kill, would not be indicated and or used. That was negotiated. The agreed upon elements were of harassment and intimidation, and yet the sentencing judge not only, I believe, relied on it, but was prejudiced by the fact that there were elements in there relating to injure and kill. Harassment and intimidation is significantly less than injure and kill. So from my standpoint, looking at the entire matter, we're asking the court to remand for a sentencing, a new sentencing, and not allow the trial court to allow the trial court to sock my client under VAWA and to have those elements taken out and have a resentencing with a different judge, if possible. And again, I want to thank the court for its patience. It's crazy times. I don't know why my phone, I've done Microsoft meetings, I haven't had a problem. I don't know why my phone was not loud, but I thank the court very much for its patience. Yes, you're welcome. We can hear you fine once we switch to the telephone connection. It wasn't really a problem with volume on the initial. It was more a problem of an imperfect connection that was cutting in and out. But in any event, we were able to hear you fine once we started over. So we thank you and Mr. Chief for both your arguments. The case is submitted and the court will file an opinion in due course. Thank you all.